GEE VS. BOLTON.

A power of attorney executed by a husband to his wife, empowered her in his name "to bargain, purchase, sell, grant, release and convey, to accept and receive all sums of money, to collect and pay, to sue and be sued, to give notes and re-

Gee vs. Bolton.

ceipts, and to accept the same of, to and from all persons, and in his name to make, seal, deliver and acknowledge," &c. *Held,* in ejectment, the defendant claiming under a deed executed in the name of the husband by the wife as his attorney, that the instrument did not, on its face, authorize her to convey *land* in his name.

*Held* also, that the power to convey land being neither mentioned in nor fairly to be implied from the instrument, parol evidence of facts and circumstances from which the intention to authorize such a conveyance might be inferred, was not admissible.—*Marr vs. Given,* 23 Maine, 55, distinguished.

The condition of a covenant by W. to convey land to H. S. was, that the latter should pay W. the amount of a certain mortgage upon another tract of land taken by W. in exchange, said mortgage to be paid as per agreement made between the mortgagor (who was the husband of H. S.) and the mortgagees, and also pay all other liens upon the land to that date, "the satisfactions and receipts of which" were to be delivered to W., his heirs, &c. H. S. paid the mortgage by assigning to the mortgagees her contract for a deed from W., and delivered the mortgage, with the note secured by it, to W.'s wife, who, as his agent under the above mentioned power of attorney, accepted the same in lieu of a satisfaction piece. *Held,* first, that the intent of the contract was, that H. S. should discharge her obligation either by redeeming from the mortgagees or by paying W. the amount of the mortgage.

*Held* also, that W.'s wife had authority, under said power of attorney, to waive the delivery of a satisfaction piece.

Plaintiff in ejectment claimed under a deed from W., executed in 1855. Defense, that W., in 1852, contracted to convey the premises to H. S. on certain conditions, which were duly performed; that in 1853 W.'s wife, in his name, under the power of attorney above mentioned, in order to perform said covenant, executed a deed of the premises to L. S., the assignee of H. S.; that L. S., in 1854, contracted to convey said land to R., who entered and occupied the same until, some time in the same year, he assigned his contract to the defendant, who immediately entered and continued to occupy the land, and received a deed of it from L. S. *Held,* that although the defendant's grantor had not acquired a legal title by the deed of 1853, yet the plaintiff, having taken his deed while the land was in the possession of the defendant, must be held to have taken it with knowledge of his rights.

Where the clerk of the circuit court neglected to file a deposition taken for the plaintiff under a commission, or to give the defendant's attorney notice of the return of the commission as required by rule 62, but the plaintiff, on producing the deposition in evidence, offered to prove that the commission had in fact been returned to the clerk of the court from which it issued, and by him sent to the clerk of the court in which the action was pending, who received and opened the package before the commencement of the term: *Held,* that the court erred in refusing to admit proof of the facts, and ruling out the deposition.

ERROR to the Circuit Court for *Rock* County.

*Gee* brought his action against *Bolton* in the Dane circuit

court, in July, 1859, to recover possession of certain land in Dane county, and for the rents and profits. The cause was afterwards sent to Rock county for trial.

In December, 1852, Danforth Whiting, being the owner of the land in question, exchanged the same with C. M. Sifert and his wife, Harriet C. Sifert, for a dwelling and shop, or store, owned by them in the town of Medina, Dane county. The latter property was incumbered by a mortgage executed by C. M. Sifert to secure a note running from Sifert & Durban to Sexton, Wing & Co., of Milwaukee, for $833.67, with interest. Whiting thereupon executed an instrument under seal, by which he covenanted to convey said land to Harriet C. Sifert, her heirs and assigns, by warranty deed, provided she would pay said Whiting, his heirs &c., the amount of the mortgage above described, " said mortgage to be paid as by agreement made by and between said C. M. Sifert and Sexton, Wing & Co. ;" and should also pay all other liens upon the property to that date, " the satisfactions and receipts of which" were to be delivered to said Whiting, his heirs &c. ; and should pay all taxes assessed upon the premises up to December 1, 1852. On the 9th of April, 1853, being about to leave this state for California, Whiting executed a power of attorney to his wife, Evelina, by which he empowered her in his name " to bargain, purchase, sell, grant, release and convey, to accept and receive all sums of money, to collect and pay, to sue and be sued, to give notes and receipts and to accept the same of, to and from all and every person or persons, and in his name to make, seal, deliver and acknowledge," &c. This instrument was recorded in December, 1853. During the same month, Harriet C. Sifert assigned her interest in the above mentioned contract to Lester Sexton, one of the firm of Sexton, Wing & Co., and Mrs. Whiting executed to said Sexton a deed of the land in suit, in her husband's name, as his attorney, and also in her own name ; and the deed was recorded a few days afterwards. It purports to be made in consideration of $833

.67, paid to the grantors by said Sexton.    The acknowledg-
ment is in the following form: "State of Wisconsin, Dane
County, ss.    Be it remembered that on this 14th day of De-
cember, 1853, the said Danforth Whiting (by his attorney) and
Evelina Whiting, his wife and attorney, who are to me per-
sonally known, appeared before me and acknowledged the
foregoing instrument to be their free act and deed. H. C. JACK-
SON, Notary Public, Dane County." The mortgage above men-
tioned was at the same time given up to Mrs. Whiting, but no
satisfaction of the same was executed. Afterwards Mrs. Whit-
ing, who was carrying on, for her husband, a store on the prem-
ises covered by the mortgage, purchased goods of Sexton, Bro.
& Co., and pledged the mortgage to them as security; and it
remained so pledged and uncancelled until the commencement
of this suit.    In January, 1855, Sexton entered into a contract
with one Rap, whereby he agreed to convey the land in suit to
Rap upon the making of certain payments by the latter. Rap
went into possession of the land, made certain payments there-
on, and afterwards, in the same year, sold his interest to the
defendant, who entered upon the land and continued in pos-
session up to the commencement of the suit.    In April, 1855,
Danforth Whiting and wife, in California, executed a deed of
the land to the plaintiff.  In October of the same year, Sexton
deeded it to the defendant.

On the trial, after the plaintiff rested, the defendant intro-
duced in evidence the several instruments above mentioned
(except the deed to the plaintiff), together with sundry deposi-
tions.    One of the deponents, being the notary who took the
acknowledgment of said power of attorney, testified that he
drew up said instrument at the request of Mr. Whiting; that
the latter wanted it drawn to enable his wife to transact busi-
ness for him while he should be absent in California; that he
enumerated various things that would be necessary to be done,
and among the rest said that Sifert was going to try to sell this
land to Sexton, and if he did it would be necessary to deed it;

and that just before executing the power of attorney he said that he could not see why it did not cover the whole case.—C. M. Sifert testified that he asked Mr. Whiting, a few days before the latter left for California, how he (Sifert) should get a title to the land ; and Whiting replied that he had given his wife a power of attorney so that she could make a deed of the land to any one witness wished. The plaintiff objected to the admission in evidence of the power of attorney, the deed to Sexton, and all testimony as to the intention of Mr. Whiting in executing the former ; but the objections were overruled. The plaintiff then offered to read in evidence the depositions of Mr. and Mrs. Whiting, taken in California under a commission from the Dane circuit court. The defendant objected, on the ground that he had received no notice from the clerk of the court that such depositions were on file, and it did not appear that they had ever been filed in fact. The defendant's attorney further stated to the court that he had inquired of the clerk whether said depositions had come, and was informed that they had not, and that he had no knowledge or information that they were here until they were offered in evidence. The plaintiff offered to show that the package containing the depositions had in fact been delivered to the clerk of the Dane circuit court, to whom it was addressed, and sent by express; that said clerk " handed them to the person who went for them, and such person then brought them to Janesville, and the package was opened by the clerk of the circuit court for Rock county " on the 23d of November (two days before the commencement of the term), but the depositions were not filed until after the trial of the action was commenced. The court refused to allow the plaintiff to prove these facts, and refused to receive the depositions in evidence. The plaintiff, as a witness in his own behalf, testified that he paid for the land its full value, and that at the time he purchased it he had no knowledge or information that Mr. Whiting had entered into any agreement to convey it to any person.

The court instructed the jury that the power of attorney from Mr. Whiting to his wife authorized her to make and acknowledge the deed to Sexton; that the execution and acknowldgement were sufficient; and that, as said deed was recorded before that of the plaintiff, the defendant was entitled to a verdict.

Verdict and judgment for the defendant.

*Knowlton & Jackson,* for appellant.

*Abbott, Gregory & Pinney,* for respondent:

1. The power of attorney was sufficient to authorize the execution of the deed to Sexton. *Marr v. Given,* 23 Me., 54. 2. The power is to be construed with reference to the subject matter, the situation of the parties, and the object to be accomplished by it, and according to the intention of the parties; and evidence was properly admitted to show these facts. *Sumner v. Williams,* 8 Mass., 213; *Wheelock v. Clark,* 11 Vt., 586; *Patrick v. Grant,* 14 Me., 234; *Brown v. Slater,* 16 Conn., 196; *Wilson v. Troup,* 2 Cow., 228–9; *Hart v. Hammett,* 18 Vt., 130; *Merrill v. Gore,* 29 Me., 346; *Lowrey v. Adams,* 22 Vt., 160; *Hildebrand v. Fogle,* 20 Ohio, 157; *Hasbrook v. Paddock,* 1 Barb., 635; *Bellinger v. Kitts,* 6 id., 273; *Mayor of N. Y. v. Butler,* 1 id., 334; 3 Starkie on Ev., 1021; *Almgren v. Dutilh,* 1 Seld., 28.

*By the Court,* DIXON, C. J. I think that the defense to this action depends solely upon the equitable rights set up in the answer and shown by the proof, and that the defendant cannot show title at law through the deed executed by Mrs. Whiting to Sexton. It is conceded that the power of attorney to Mrs. Whiting from her husband was insufficient on its face to authorize the conveyance. I say it is conceded, because the defendant's counsel deemed it unsafe to rest upon the power of attorney alone, but attempted to fortify it and to uphold the deed by the introduction of a large amount of parol evidence. This parol evidence was offered and received ostensibly to show

the circumstances attending the execution of the power, in order to enable the court and jury to apply its provisions to the subject-matter; and one of the chief questions here is, whether it ought to have been admitted—whether such was in fact its tendency.    I think it was inadmissible, for the reason that the subject matter to which the defendant thus seeks to apply the power, namely, the conveyance of land, is neither mentioned in nor fairly to be implied from the language of the instrument.    To warrant the introduction of such evidence, there must, in my judgment, be something on the face of the instrument, either expressed or plainly implied, showing that the maker intended to authorize the conveyance of lands. Otherwise, there are no provisions of the instrument, no subject matter, to which the parol evidence can be directed, and the rule of evidence relied upon by the defendant cannot come into action.    To receive it would be to insert provisions and create a subject matter by parol, where none appeared by the writing, which is contrary to all settled rules.    The subject matter and general intention of the maker must first be shown by the writing without the aid of extrinsic evidence, and then, no doubt, such evidence may be received to ascertain the particular subject in view at the time the writing was made, wherever its terms are equivocal or applicable indifferently to more than one subject.

In this case the efficient words of the power are, " to bargain, purchase, sell, grant, release and convey, to accept and receive all sums of money, to collect and pay, to sue and be sued, to give notes and receipts and to accept the same of, to and from all and every person or persons, and in my name to make, seal and deliver and acknowledge for me."    These are all.    There is no allusion to land—nothing from which an authority to convey it can by implication arise.    The only words tending to such implication are, " *bargain, sell, grant, release* and *convey,*" and perhaps " *make, seal, deliver* and *acknowledge.*" They are consistent with an intention to give such authority,

but in the connection in which they are found, they do not establish it. They are not at the same time inconsistent with the supposition that the maker did not intend to grant such authority. In my opinion both these things must concur before authority by implication can be said to have been conferred. The language of the instrument must not only be consistent with the power claimed, but must exclude every other reasonable hypothesis. In this instrument it appears that the attorney was to do other things in behalf of her principal. She was to *purchase* as well as *bargain, sell and convey, to accept and receive all sums of money, to collect and pay, to sue and be sued, to give notes and receipts and to accept the same of, to and from all and every person or persons.* This very clearly indicates an intention on the part of her husband to entrust Mrs. Whiting with the management and control of his ordinary business affairs and dealings, such as the purchase and sale of personal property, the collection and payment of debts, &c. The words relied upon to show an implied authority to convey land, though not, perhaps, some of them, usual in powers for the sale and transfer of personal property and the collection and payment of debts, are still not unsuited to that purpose. Such may have been the application intended, and I think it not unreasonable to suppose that it was. If it was, then a construction which would apply them differently and so as to enlarge the power and extend it to subjects not intended, would be an act of violence. If this power can be construed to authorize the *sale* or *conveyance* of land, I see no reason why it should not be also held to authorize the *purchase.* The inference in favor of the one is as strong as that in favor of the other, and yet I hardly think counsel would contend that Mrs. Whiting could have purchased lands and charged her husband with the price.

Besides it appears, from the defendant's evidence, that Mr. Whiting, then a resident of the county of Dane, was, at the time of executing the power, about to go to the state of Cali-

fornia, and that he then was or soon expected to be engaged in the mercantile business in the county of Dane, which business was to be left in charge of his wife. It was so left and transacted during his absence. This seems to me conclusive against the construction urged in behalf of the defendant. The subject matter of the power is no longer doubtful, and the supposition that it might have been land is effectually excluded.

Very different was the case of *Marr vs. Given*, 23 Maine, 55, to which we are referred. There every word of the power tended unequivocally to the conclusion that it was authority to sell and convey land which was intended, and admitted no .contrary supposition; and the court, holding that such authority might be imparted by implication, sustained the conveyance. The attorney was authorized " to bargain, sell, grant, release and convey;" " and upon such sale or sales convenient and proper deeds, with such covenant or covenants, general or special, of warranty, quitclaim or otherwise, as to my said attorney shall seem expedient, in due form of law, as my deed or deeds, to make, seal, deliver end acknowledge." The power of attorney was silent as to what he was to sell and convey. It appeared that the principal resided in a foreign country, and that he had no other land in the country of the agent than that embraced in the conveyance; and the court applied the power to that. I am not disposed to criticize the decision. I do not think it inconsistent with the general doctrine so often sanctioned, that a power to convey lands must possess the same requisites and observe the same solemnities as are necessary in a deed directly conveying the lands. *Clark vs. Graham*, 6 Wheat., 577; *Lumbard vs. Aldrich*, 8 N. H., 31; *Gage vs. Gage*, 10 Foster, 420; *Lord vs. Sherman*, 2 Cal., 498.

A question is also made as to whether the deed to Sexton was so acknowledged as to entitle it to be recorded, but as I hold that the power of attorney did not authorize its execution, a discussion of that question becomes unnecessary.

Coming to the equitable branch of the answer or defense, the case presents itself to my mind in a very different light. As it now stands upon pleadings and proof, I think the defendant's right in equity to the land clearly established, and that he is entitled to the relief demanded by the answer against the title of the plaintiff. This branch of the defense depends upon the contract for the sale of the land by Mr. Whiting to Mrs. Sifert, which contract was afterwards assigned by Mrs. Sifert to Sexton, who entered into a contract to convey to Rap. Rap took possession, and subsequently assigned his interest to the defendant, who also took possession and remained in to the time of trial. The balance of the purchase money due under the Rap contract was afterwards paid by the defendant to Sexton, who executed and delivered to the defendant a conveyance, supposing undoubtedly that he himself had acquired the legal title through the power of attorney and the deed executed to him by Mrs. Whiting. The possession both of Rap and the defendant was prior to the execution and delivery of the deed to the plaintiff. The defendant was in possession at the time. The plaintiff must therefore be deemed to have had notice of the defendant's right. The only questions upon this branch of the case arise out of the contract between Mr. Whiting and Mrs. Sifert, and the foregoing power of attorney, and are, whether that contract was ever performed on the part of Mrs. Sifert or Sexton, and, if not, whether Mrs. Whiting, as attorney for her husband, was authorized to waive any of its stipulations.

It appears that Mrs. Sifert's interest in the land was acquired by an exchange of lands between herself and husband and Mr. Whiting. They exchanged a dwelling and shop in the village of Medina for the land. At the time of the exchange, the dwelling and shop were incumbered by a mortgage executed by Mr. Sifert to Sexton, Wing & Co. of Milwaukee, of which firm Sexton was a member. This mortgage was to be paid by the Siferts; and, to secure performance on their part,

Whiting retained the title of the land, giving to Mrs. Sifert a contract to convey it to her when the mortgage was discharged. Provision was also made for any other liens or incumbrances, and certain taxes. The contract in this respect reads, that Mrs. Sifert was to pay Mr. Whiting "the just and full sum of a certain mortgage upon the premises  *  *  *  given by C. M. Sifert to Sexton, Wing & Co., predicated on a note signed by Sifert & Dunbar, dated Dec. 5th, 1848, the original amount of which was $833.67 ; said mortgage to be paid as by agreement made by and between said C. M. Sifert and Sexton, Wing & Co. ; and also all other liens and incumbrances upon said property up to this date, the satisfactions and receipts of which are to be delivered to said first party (Whiting), his heirs, executors, administrators or assigns ; and to pay all taxes that shall be assessed on the premises up to the first day of December, 1852." The contract is dated Dec. 15th, 1852. Objection is taken by the plaintiff, that the mortgage was never discharged. There is no controversy as to other liens, or the taxes. Mrs. Sifert assigned the contract for the land to Sexton in payment of the mortgage, and Sexton delivered the note and mortgage to Mrs. Whiting, as the agent of her husband, who accepted them in satisfaction of the contract without requiring the mortgage to be formally discharged of record. Mrs. Whiting subsequently re-delivered the note and mortgage to Sexton, Brother & Co., successors to Sexton, Wing & Co., to secure the payment of money due them for goods purchased by Mrs. Whiting in the course of the business which she was transacting for her husband. Sexton, Brother & Co. now hold the note and mortgage. It is insisted, for the plaintiff, that Mrs. Whiting had no authority to receive the note and mortgage in discharge of the contract with Mrs. Sifert, without a formal satisfaction, which, when recorded, would extinguish the mortgage of record—that the contract calls for satisfactions and receipts to be delivered to Mr. Whiting. I think it follows from what has already been said, that she had such

authority. She was fully empowered to collect and receive any and all sums of money and debts due to her husband, and give receipts for the same; and I think this included the power on her part to fix conditions of payment, and to waive stipulations in favor of her husband, especially such as did not affect or diminish the sums to be received.

Another objection is, that the contract required not only the satisfaction of the mortgage, but also the payment of the same amount to Mr. Whiting. It is obvious to me that such is not the proper construction. The intention of the parties evidently was, that Mrs. Sifert might discharge her obligation, either by redeeming from Sexton, Wing & Co. or by paying the amount to Mr. Whiting so that he could redeem.

It is also insisted that the answer in this respect is insufficient—that it does not set out all of the conditions of the contract. No objection was taken to the admission of testimony on that ground, and if there had been, no doubt the court would have allowed an amendment on such terms as would have been just.

But one other question remains to be considered; and that is, the rejection of the depositions of Mr. and Mrs. Whiting. They ought not to have been excluded because the clerk had neglected to give notice of the return of the commission as prescribed by rule 62. *Carlyle vs. Plummer*, 11 Wis., 106. The commission was fairly and properly executed; and I think, upon proof of the facts offered by the plaintiff's counsel, they should have been admitted. I see no evidence of unfair or improper conduct on the part of the plaintiff or his counsel after its return.

For these reasons I am of opinion that the judgment below should be reversed, and the cause remanded for further proceedings according to law.

Ordered accordingly.