[No. A040446. First Dist., Div. Five. Mar. 25, 1988.]

KENT SMITH, Petitioner, v.
THE MUNICIPAL COURT FOR THE SAN MATEO COUNTY
JUDICIAL DISTRICT OF SAN MATEO COUNTY, Respondent;
TMI GROWTH PROPERTIES '83, Real Party in Interest.

COUNSEL

Jon R. Parsons for Petitioner.

No appearance for Respondent.

Douglas E. Carey for Real Party in Interest.

OPINION

LOW, P. J.—In this case we hold that a rented boat slip in a marina is "real property" for purposes of unlawful detainer.

Petitioner Kent Smith, a Redwood City boat user, is defendant in an unlawful detainer action brought by the Peninsula Marina through its operator, real party in interest TMI Growth Properties '83 (TMI). TMI seeks to evict Smith and his 36-foot sailboat, the *Solaris,* from a rented boat slip in the marina. Smith moved to quash the five-day unlawful detainer summons on the ground that the action did not involve "real property" and the court's jurisdiction could not be invoked by an unlawful detainer summons. The municipal court denied the motion, and the superior court denied Smith's petition for writ of mandate. Smith filed this petition seeking "second-tier" writ review under Code of Civil Procedure section 904.1, subdivision (a)(4).

Because the issue appeared novel and Smith would have mooted his jurisdictional challenge by responding to the summons, we stayed the

unlawful detainer proceedings and requested opposition from real party. We have reviewed the matter under Code of Civil Procedure section 904.1 because the question presented appears to be of first impression and of statewide importance. We conclude Smith's position is without merit and deny the petition.

I

The Peninsula Marina is situated in navigable waters bordering San Francisco Bay but within the political boundaries of San Mateo County. TMI operates the marina under a 20-year grant of authority from the San Mateo County Board of Supervisors pursuant to Harbors and Navigation Code section 4000. This statute provides that "[t]he board of supervisors of any county may, upon approval of the Public Utilities Commission, grant authority to any person to construct a wharf, chute, or pier, on any lands bordering on any navigable bay, lake, inlet, creek, slough, or arm of the sea, situated in or bounding the county, with a license to take tolls for its use for the term of 20 years." In essence, TMI holds a 20-year license under which it enjoys the right to construct wharves, charge for their use and control and maintain the area encompassed by the grant.

The marina rents boat slips and provides its nautical tenants with electricity, fresh water, parking spaces and access to their boats. According to Smith, the marina does not provide septic facilities, gas, or other utilities. When it occupies its rented boat slip, Smith's boat is tied to the wharf by ropes which are easily loosened and not permanently attached to the wharf. It is undisputed that the boat, when berthed, floats on navigable waters.

Smith's boat slip rental is governed by a contract between Smith and TMI, entitled "Peninsula Marina Anchorage Rental Agreement," which recites that it is "for the rental of space to yacht owners and operators." Under the terms of the agreement, Smith agreed "to rent . . . space"; to pay TMI a " 'monthly rental' " and "security deposit" and abide by "covenants and conditions"; to not sublet the space without written consent; to allow entry of TMI onto his boat for "emergency service" and "at reasonable times for periodic inspections to determine the safety and condition" of the vessel; and to obey all posted rules and regulations of the marina. Either party may terminate the agreement at any time with 30 days written notice.

A dispute arose over charges due under the agreement. TMI attempted to foreclose on the statutory liens for nonpayment of dockage fees (Harb. &

Nav. Code, §§ 491, 501).[1] TMI gave the requisite 30-day notice that the rental agreement was terminated, and filed a breach of contract action based on the violation of the 30-day notice and quit provision of the lease and an unlawful detainer action for eviction using the 5-day summons.

Smith moved to quash the five-day summons on two grounds: (1) that Smith was only a "licensee" and thus not subject to unlawful detainer; and (2) that unlawful detainer was not an available remedy because the rented boat slip was not "real property." The municipal court denied the motion, ruling licensees were governed by unlawful detainer (Code Civ. Proc., § 1161) and "the marina . . . constitutes real property with respect to [TMI's] occupancy and use of land. . . ."

Smith then filed a petition for writ of mandate in superior court. After issuing an alternative writ and holding a hearing, at which Smith conceded the licensee issue, the superior court denied the petition. Smith, refusing to abandon ship, sought writ relief in this court.

## II

Both parties agree that if TMI cannot state a cause of action in unlawful detainer, its five-day summons cannot vest jurisdiction in the municipal court (*Greene* v. *Municipal Court* (1975) 51 Cal.App.3d 446, 451-452 [124 Cal.Rptr. 139]), and a thirty-day summons must issue (*Martin* v. *Pacific Southwest Royalties* (1940) 41 Cal.App.2d 161, 167 [106 P.2d 443]). They further agree that Smith had to raise his objection to the court's jurisdiction by a motion to quash the summons (*Tresway Aero, Inc.* v. *Superior Court* (1971) 5 Cal.3d 431, 435 [96 Cal.Rptr. 571, 487 P.2d 1211]; see Code Civ. Proc., § 412.20), because a demurrer would have constituted a general appearance and waived the summons's jurisdictional defect (*Delta Imports, Inc.* v. *Municipal Court* (1983) 146 Cal.App.3d 1033, 1036 [194 Cal.Rptr. 685]). ▮ Thus, this case clearly presents the substantive issue whether, under current law, a marina may use unlawful detainer to evict a defaulting renter of a boat slip.

Smith contends unlawful detainer is not available because the rental of a defined space of surface water is not a rental of "real property."

---

[1] Although TMI alleges the foreclosure action is still pending, Smith maintains the action was not successful: apparently the foreclosure law targets the boat's legal owner, and the *Solaris* is legally owned by Smith's bank. Whatever the status and scope of the foreclosure action, and the exact rights and responsibilities thereunder, lien foreclosure is a protracted procedure and is not intended to be an exclusive remedy. (See Harb. & Nav. Code, §§ 502, subd. (g), 503.) Furthermore, the rental agreement provides that "[t]he rights of [TMI] under this Lease shall be cumulative to all other rights or remedies which are or may be in the future conferred upon [TMI] . . . by . . . law."

■ First, Smith argues that unlawful detainer actions are to be narrowly construed because unlawful detainer "is a statutory proceeding and is governed solely by the provisions of the statute creating it." (*Fifth & Broadway Partnership* v. *Kimny, Inc.* (1980) 102 Cal.App.3d 195, 200 [162 Cal.Rptr. 271, 7 A.L.R.4th 580].) Because unlawful detainer affords the defendant fewer procedural entitlements (*Markham* v. *Fralick* (1934) 2 Cal.2d 221, 227 [39 P.2d 804]), the plaintiff must clearly bring itself within the purview of the unlawful detainer statutes. (*Baugh* v. *Consumers Associates, Ltd.* (1966) 241 Cal.App.2d 672, 674-675 [50 Cal.Rptr. 822]; *Horton-Howard* v. *Payton* (1919) 44 Cal.App. 108, 112 [186 P. 167].)

Smith's general statements of law are valid but do little more than state the given. The strict construction of the unlawful detainer statutes does not automatically award Smith the victory. We have concluded that expansive interpretation is not needed to reach the holding that a marina slip is within recognized definitions of "real property."

Smith correctly notes that the unlawful detainer statutes apply only to an occupant of real property (Code Civ. Proc., § 1161) or to a holdover tenant in a manufactured home or mobilehome as those terms are statutorily defined (Code Civ. Proc., § 1161a, subd. (a)). Noting, again correctly, that his *boat* does not fit the definition of a manufactured home or a mobile home, Smith argues that the remaining "question before this Court is whether a navigable boat temporarily tied to and docked at a wharf constitutes occupancy of 'real property'."

■ Smith has charted the wrong course. The issue is not whether the *vessel* is real property because it is tied to a land-based wharf, but whether the rental of *the space on the water* is a rental of real property. The term "real property" is defined at several places in the Code of Civil Procedure. Code of Civil Procedure section 17 defines the term as "coextensive with lands, tenements, and hereditaments." Code of Civil Procedure sections 481.203 and 680.320 define the term to "[include] any right in real property, including, but not limited to, a leasehold interest in real property." The Civil Code is more explicit. "Property is either: [¶] 1. Real or immovable; or, [¶] 2. Personal or movable." (Civ. Code, § 657; see also Code Civ. Proc., §§ 481.195, 680.310.) Property is defined as "the thing of which there may be ownership" (Civ. Code, § 654)—thus, if something can be owned and cannot be moved, like the surface of a body of navigable water, it constitutes "real property." Smith's leasehold interest in his boat slip would therefore seem to be an interest in real property, subject to unlawful detainer.

This logic finds support in the law of water ownership. ■ "Water in its natural state is a part of the land, and therefore *real property*." (3 Witkin,

Summary of Cal. Law (8th ed. 1973) Personal Property, § 53, p. 1661.) The state's navigable waterways and their underlying beds are owned by the state in trust for the public. (*Marks* v. *Whitney* (1971) 6 Cal.3d 251, 258, fn. 6 [98 Cal.Rptr. 790, 491 P.2d 374]; *City of Oakland* v. *El Dorado T. Co.* (1940) 41 Cal.App.2d 320, 329 [106 P.2d 1000]; see *Coburn* v. *Ames* (1877) 52 Cal. 385, 398-399.)[2] By virtue of Harbors and Navigation Code section 4000, the state has seen fit to permit county boards of supervisors to grant licenses for wharf operations in navigable waters within or adjacent to the county. At least for unlawful detainer purposes, TMI stands in the place of the state as owner of the navigable waters of the marina and the underlying bed. Since the water on which Smith's boat rests is real property, TMI may employ unlawful detainer to remove tenants.[3]

Smith does not view the case in this light, but focuses his attention on TMI's position as owner of the *adjacent land* to which the wharf is attached. The crux of his argument is that the *wharf* is not real property because it is not "affixed" or "appurtenant" to land within the definition of Civil Code section 658. He relies heavily on *Coburn* v. *Ames, supra,* 52 Cal. 385, which appears to hold that a wharf attached to land is not so "affixed" or "appurtenant." Smith further argues that even if the wharf is real property, temporarily tying a boat to the wharf does not amount to "use or occupancy" of that property. Smith's reliance on *Coburn* is misplaced and his arguments misdirected. It is the ownership of the navigable water of the boat slip, not the wharf, which is the key factor in determining availability of unlawful detainer.

We conclude the occupancy of a rental boat slip in navigable waters amounts to an occupancy of real property for purposes of unlawful detain-

---

[2] Nonnavigable waters may be owned by virtue of the private ownership of the bed beneath the water: "The owner of submerged land, like the owner of dry land, owns also to the sky and to the depths: *Cujus est solum, ejus est usque ad coelum et ad inferos.*" (*Steel Creek Development Corp.* v. *James* (1982) 58 N.C.App. 506 [294 S.E.2d 23, 27], fn. omitted; see generally, 78 Am.Jur.2d, Waters, §§ 44, 51, pp. 486-487, pp. 493-494.)

[3] Smith somewhat obliquely argues that *Union Oil Co.* v. *Rideout* (1918) 38 Cal.App. 629 [177 P. 196], provides authority that a boat user and a marina cannot stand in a landlord-tenant relationship. *Union Oil* did not involve an eviction of a boat by a marina, but a suit by an oil company for damages to property allegedly caused by the owner of a boat docked at the San Francisco waterfront. In dicta, the court stated, "As to the contractual relation existing between the harbor commissioners and those to whom they let the privilege of docking their boats at the piers, while it is to be conceded that, in a strict sense, . . . the relation of landlord and tenant does not exist between them [citation], still it cannot be doubted that, so long as the owners of boats have their vessels in dock at said piers, . . . *they are nevertheless as much occupants of said piers as they would or could be if they were in the strictest sense tenants of said commissioners.*" (*Id.,* at p. 636, italics added.) *Union Oil* is not compelling authority in Smith's favor, and the emphasized language would, if anything, support TMI.

er. Contrary to Smith's concluding argument, our ruling does not permit a "mere" holder of a franchise to impede the "freedom of navigation." TMI holds a license under a grant from the Legislature, and its unlawful detainer action is not an impermissible infringement upon navigation but an available legal remedy against an allegedly defaulting tenant.

The petition for writ of mandate is denied. The stay heretofore imposed is dissolved.

King, J., and Haning, J., concurred.