[Civ. No. 47896. Second Dist., Div. One. Dec. 27, 1976.]

JACQUELINE CYRUS, Plaintiff and Appellant, v.
ALVIN HAVESON et al., Defendants and Appellants.

COUNSEL

Strumwasser & Leichter, Alexandra Leichter and S. Paul Strumwasser for Plaintiff and Appellant.

Gallop, Norton & Marshall and Robert L. Fairman for Defendants and Appellants.

OPINION

**THOMPSON, J.**—The matter at bench involves cross-appeals from a default judgment. Defendants contend: (1) the trial court erred in denying their motion to be relieved from default on the ground of excusable neglect; (2) the court failed to obtain personal jurisdiction because of defective service of summons; and (3) the complaint fails to allege facts sufficient to support exemplary damages. In her cross-appeal, plaintiff contends that the trial court erred when, after referring the assessment of damages to a jury pursuant to Code of Civil Procedure section 585, subdivision 2, it reduced the jury's award from a total of $53,777.97 to $23,277.97 and entered judgment for the smaller amount.

We conclude: (1) the trial court did not abuse its discretion in denying defendants' motion to be relieved from default; (2) service of summons was not defective; (3) the complaint fails to allege facts sufficient to support an award of punitive damages; and (4) the trial court did not err in reducing the jury award. We modify the judgment to eliminate punitive damages and affirm the judgment as modified.

*Facts*

Plaintiff filed her unverified complaint which commenced the case at bench on February 13, 1974. The complaint, framed in six causes of action, is captioned "Breach of covenant of quiet enjoyment; forcible entry and detainer; conversion of personal property; damages for trespass; intentional infliction of emotional distress; and negligent infliction of emotional distress."

Allegations of the first cause of action state that on June 1, 1971, defendants orally leased an apartment to plaintiff on a month-to-month tenancy at $170 per month, and that in violation of the covenant of quiet

enjoyment contained in the lease defendants, on June 1, 1973, entered the premises and evicted plaintiff, keeping her out of the premises and installing a new tenant in the apartment. There is no factual allegation that the month-to-month tenancy was in effect on June 1, 1973. Damages are asserted for loss of personal property in the amount of $6,000, "grevious [sic] mental and emotional disgress [sic] to [plaintiff's] general damage" in the amount of $10,000, and the cost of medical attention in an amount not yet ascertained. Exemplary damages of $10,000 are claimed because defendants acted maliciously and wantonly in disregard of plaintiff's rights.

The second cause of action alleges that within the five days preceding June 1, 1973, plaintiff "was in actual, peaceable and undisturbed possession" of the apartment and that on June 1 defendants, without plaintiff's consent, took possession of the apartment by forcing open the door while plaintiff was absent. The second cause of action of the complaint asserts, also, that on December 12, 1973, and December 18, 1973, plaintiff served upon defendant Haveson notice to surrender possession of the premises and that although more than five days had elapsed since the demand defendants continued in possession. Defendants use of "abusive language" to plaintiff in response to her demand for possession is alleged, as is the proposition that defendants' continued possession is "wilful, intentional, deliberate, and obstinate." The second cause of action claims damages for use and occupancy of the apartment at the rate of $170 per month for the period of defendants' possession, $6,000 for loss of personal property, and $10,000 in "general damages" for "grevious [sic] mental and emotional harm." Punitive damages are sought because each defendant "acted maliciously and . . . was guilty of a wanton disregard of the rights of plaintiff in that plaintiff had lawful possession of said premises and had not received notice to quit or consented to defendants entering and taking possession thereof . . . ."

The third cause of action asserts that defendants converted $6,000 in value of personal property owned and possessed by plaintiff. It alleges that "[p]laintiff has suffered great distress of body and mind and has had need of professional medical services in consequence of the unlawful, unjust and wrongful acts of defendants . . . ." to plaintiff's damage in an undetermined amount. The third cause of action alleges, also, that "defendants . . . committed said acts wilfully, wantonly, and maliciously and the natural result of said intentional acts of defendants caused plaintiff severe mental suffering and wounded feelings, and because of such wilfulness and malice, plaintiff seeks punitive damages in the sum of $10,000.00."

The fourth cause of action asserts plaintiff's right of possession of the apartment and that on June 1, 1973, defendants, without plaintiff's consent, entered it and removed articles of personal property belonging to plaintiff. The cause of action claims damages of $170 per month from June 1, 1973, to the "present" as "the reasonable rental value of the premises." It also asserts that by reason of "the conduct of defendants, plaintiff has been deprived of her personal property . . ., loss of her dwelling, and has suffered grevious [sic] mental and emotional distress, an inability to pursue her usual activities, loss of sleep and general health, requiring her to seek medical attention . . . ." The fourth cause of action alleges that defendants' conduct in placing another tenant in the apartment was malicious and in wanton disregard of the rights of plaintiff "in that [defendants] deprived plaintiff of her dwelling and forced her to seek shelter elsewhere." Exemplary damages of $10,000 are claimed.

The fifth cause of action asserts that defendants were the owners of the apartment of which plaintiff was a tenant and that on June 1, 1973, "while plaintiff was out of town, defendants entered [the] apartment [and] removed plaintiff's clothing and all her belongings . . . ." It alleges that defendants "wilfully, maliciously and unlawfully changed the lock on the door of plaintiff's apartment, thereby preventing plaintiff from entering, occupying and enjoying [the] premises." The cause of action asserts that plaintiff "has been unable to discover" the whereabouts of the personal property removed by defendants and that "[d]efendants have refused to return the few items of personal belongings of plaintiff, the location of which plaintiff has been unable to ascertain, unless plaintiff signs a 'release' for all of her personal property, although defendants claim to no longer have many items in their possession or refuse to return the same." The eviction is asserted to have caused plaintiff "great mental distress" and to have resulted in her becoming ill and unable to attend to her normal daily activities "to her general damage of $5,000.00." Exemplary damages of $10,000 are claimed because "[d]efendants' acts of ejection of plaintiff from the premises were wilful, malicious, deliberate and without probable cause." Damages for medical care in an undetermined amount are also asserted.

While captioned an action for intentional infliction of emotional distress, the fifth cause of action contains no allegation that defendants intentionally inflicted emotional distress upon plaintiff.

The sixth cause of action realleges the fact of the eviction. It asserts that defendants had a duty to proceed by way of service of a notice to quit and "an unlawful detainer," and that "[d]efendants breached that duty when they entered upon plaintiff's premises . . . ." The cause of action asserts, also, that defendants "so negligently took possession of plaintiff's dwelling without making a reasonable effort to determine her whereabouts or reasonable effort to serve her with a notice to quit, . . . that plaintiff was caused . . . to seek shelter with a friend, being denied entrance to her dwelling." Shock and injury to plaintiff's nervous system and pain and suffering are alleged for which plaintiff seeks damages of $10,000, together with an unascertained amount of medical expense. Damages of $6,000 resulting from the loss of plaintiff's personal property is also claimed by the sixth cause of action.

Summons and unverified complaint were served upon defendants Haveson and Nathans in February of 1974. Nathans immediately contacted Haveson, who had acquired the apartment building from Nathans in 1970. Central National Insurance Company, represented by Devonshire Coverage Corporation for the purpose of investigation and adjustment of claims, had issued its policy of insurance covering the apartment building. Haveson informed Devonshire of the service of plaintiff's complaint.

Devonshire assigned investigation of the matter to James A. Dorman of J. A. Dorman and Associates, a licensed and bonded investigator. On February 26, 1974, Dorman called counsel for plaintiff and informed him that Dorman represented the insurance carrier for Haveson and Nathans. Plaintiff's counsel granted Dorman an open extension of time to answer the complaint. Dorman stated that the matter was one which should be settled.

Nathans called plaintiff's counsel on March 14 and informed counsel that Nathans had no responsibility, having disposed of the property before the incident alleged in the complaint. Plaintiff's counsel advised Nathans to consult his own lawyer. On March 27, plaintiff's counsel, at Dorman's request, mailed him a copy of the summons and unverified complaint. Recognizing for the first time on May 14, 1974, the legal requirement for verification of a complaint charging forcible detainer, plaintiff's counsel caused a verification of the complaint to be filed on that date.

On June 17, Dorman interviewed plaintiff at her counsel's office and tape-recorded the interview. On July 29, a transcript of plaintiff's statement was sent to Dorman. On August 14, plaintiff's counsel sought unsuccessfully to settle the matter in a telephone conversation with Dorman. Plaintiff's counsel told Dorman that he had until September 10, 1974, to answer the complaint or a default would be taken. On September 17, no answer having been filed, plaintiff's counsel again telephoned Dorman to inform him of counsel's intention to take the default if an answer were not filed by September 20. The telephone conversation was confirmed in writing by a letter from counsel to Dorman.

On September 18 and 23, the verification to the complaint was served respectively upon Haveson and Nathans. On September 25, 1974, plaintiff's counsel directed a certified letter to Dorman repeating his intention to take a default unless an answer was filed. Dorman acknowledged receipt of the letter. That same date, plaintiff's counsel sent letters personally to Nathans and Haveson stating that since neither they nor Dorman had caused an answer to be filed their defaults would be taken. On October 2, 1974, Haveson and Nathans were served with the summons and verified complaint. Nathans called plaintiff's counsel and was advised by him to hire an attorney.

On November 1, 1974, plaintiff's counsel sent two letters each to Haveson and Nathans, one by first class and the other by certified mail, return receipt requested. Each letter states that the time for answer to the complaint served on October 2 had expired and that counsel intended to file a request to enter default within five days unless an answer was filed to the complaint.

"[O]n or about" November 1, Nathans personally refused delivery of the letter. He again personally refused delivery on November 7. The certified letter to Haveson was returned unclaimed.

On November 8, 1974, plaintiff filed her request to enter default. Copies of the filing were sent to Nathans and Haveson on November 8 and again to Haveson at a different address on November 13. The copies of the request to enter default were received by Haveson and Nathans. Haveson forwarded his copy to his personal counsel. No other action was taken by either Haveson or Nathans. Default of Haveson and Nathans was entered.

On January 16, 1975, defendants Haveson and Nathans moved to set aside the default pursuant to Code of Civil Procedure section 473. The notice asserts that the motion will be made on the ground that the default was entered "by virtue of mistake, inadvertance [*sic*], surprise and excusable neglect . . . ." Declarations filed in support of and in opposition to the motion established the facts recited above when they are read, as they must be, in the light most favorable to action of the trial court. (*Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 259 [62 Cal.Rptr. 12, 431 P.2d 636].) The trial court denied the motion to set aside the default.

On May 6, 1975, plaintiff presented an ex parte application for a jury hearing to assess damages pursuant to Code of Civil Procedure section 585, subdivision 2. The trial court granted the application on May 8. After hearing plaintiff's evidence, the jury awarded her general damages of $18,000, punitive damages of $29,500, and special damages of $6,277.97.

Judgment on the verdict, in the total amount of $53,777.97, was filed on May 16, 1975, and entered on May 19. On May 19, the trial court, on its own motion, filed its order modifying the judgment. The order recites that: "the amount of damages fixed by the jury . . . shocks the conscience . . . ." The order finds that "a genuine question exists as to whether the default . . . should not have been set aside . . .," that "the evidence was sketchy and conclusion-oriented on the question of the actual damages suffered by plaintiff as well as the amount . . . fixed as punitive damages," and that "some arithmetic justification may exist in the jury's verdict of $6,277.97 in special damages, but that the evidenciary [*sic*] justification for the jury's verdict with respect to general and punitive damages is vague."

The trial court found that plaintiff was entitled to $8,500 for general damages and $8,500 in punitive damages in addition to the special damage found by the jury in the amount of $6,277.97. Accordingly, the court reduced the judgment to $23,277.97.

### Defendants' Appeal

Defendants' contentions of trial court error in denying their motion to set aside their default lack merit. Those contentions assert: (1) the trial court abused its discretion in failing to find that defendants had met the burden imposed by Code of Civil Procedure section 473; and (2) defendants were not properly served with the summons and complaint.

■ The record does not establish that the trial court abused its discretion when it determined that defendants had not made a sufficient showing to satisfy the requirements of section 473. That statute provides in part that: "The court may . . . relieve a party . . . from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." The mistake, inadvertence or surprise which justifies a court in setting aside a default must be reasonable. (See 5 Witkin, Cal. Procedure (2d ed.) Attack on Judgment in Trial Court, §§ 126-147.)

Here the trial court could properly find that defendants did not act reasonably in failing to plead to the complaint. Defendants sought to excuse their neglect by their reliance upon Dorman and the insurance company he represented to defend them. Reliance upon a third person's agreement to defend may be reasonable so as to justify a failure to plead to a complaint. (See 5 Witkin, Cal. Procedure (2d ed.) Attack on Judgment in Trial Court, § 142.) Here, however, there is evidence from which the trial court could determine that defendants' continued reliance upon Dorman and his company was unreasonable.

Defendants properly relied upon Dorman from February 1974, when the complaint was filed, until late September when they were informed by plaintiff's counsel that a default would be taken unless an answer was filed. At that point, defendants were placed on notice that some action was required of them. The letters of November 1, stating that the time to answer had expired and that a default would be taken within five days, and the copies of the request to enter default received by defendants on November 8 emphasized that Dorman and the insurance company he represented were not protecting defendants' position in the litigation. Defendants' declarations do not explain why no action was taken by them until well after the default was entered. Their inaction in early November supports the trial court's implied finding of inexcusable neglect.

■ Contrary to defendants' argument, they were properly served with summons and complaint. Defendants contend that the filing of a verification to the complaint after it had been filed amended the pleading so as to require that summons be issued on an amended complaint and served with it upon defendants. "Amendment of the complaint after service of summons does not require either a new summons or a new service on an *existing party defendant.* Once jurisdiction of such a party is obtained by service of the summons and

original complaint, the amended pleading alone is served . . . ." (2 Witkin, Cal. Procedure (2d ed.) Actions, § 607, italics in original; see also Judicial Council of Cal. com. to Code Civ. Proc., § 412.10.) Here the complaint was amended after it was served upon defendants. The amendment was served upon them and subsequently both the complaint as amended and the summons were again served.

 Defendants' contention that the complaint fails to allege facts sufficient to support the portion of the judgment awarding punitive damages presents a closer question.

Exemplary damages are sought in the first, second, third, fourth, and fifth causes of action. In each instance, $10,000 is claimed. The first cause of action is for breach of contract and thus does not support a claim of punitive damage. (Civ. Code, § 3294; *Crogan* v. *Metz* (1956) 47 Cal.2d 398, 405 [303 P.2d 1029].) The second cause of action alleges forcible entry and detainer and that defendants "acted maliciously and [were] guilty of . . . wanton disregard of the rights of plaintiff in that plaintiff had lawful possession of [the] premises and had not received notice to quit or consented to defendants entering and taking possession thereof . . . ." The third cause of action alleges conversion of personal property and that defendants acted "wilfully, wantonly, and maliciously." The fourth cause of action asserts trespass and alleges that defendants' conduct in placing another tenant in her apartment was malicious and in wanton disregard of her rights. The fifth cause of action, while captioned one for intentional infliction of emotional distress, contains no allegation that defendants intended to inflict emotional distress on plaintiff. Absent that allegation, the fifth cause of action is nothing more than a restatement of the causes of action for forcible entry and detainer, trespass, and conversion.

We thus consider the sufficiency of the pleading to support punitive damages as claimed in its second, third, and fourth causes of action as amplified by the fifth. A cause of action for forcible entry and detainer supports punitive damages in an amount not in excess of three times actual damage in lieu of actual damage where malice is shown. (Code Civ. Proc., § 1174, subd. (b).) Causes of action for conversion and trespass also support the award of exemplary damages. (*Ferraro* v. *Pacific Fin. Corp.* (1970) 8 Cal.App.3d 339, 351 [87 Cal.Rptr. 226]; *Haun* v. *Hyman* (1963) 223 Cal.App.2d 615, 619-620 [36 . Cal.Rptr. 84].) To support punitive damages, the complaint asserting one of those causes of action must allege ultimate facts of the defendant's

oppression, fraud, or malice. (Civ. Code, § 3294.) "Malice is properly pleaded by alleging the wrongful motive, intent or purpose." (3 Witkin, Cal. Procedure (2d ed.) Pleading, § 766.) "A general allegation of [that] intent is sufficient . . . ." (*Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 632 [102 Cal.Rptr. 815, 498 P.2d 1063].)

The second cause of action alleges that defendants acted maliciously and in wanton disregard of plaintiff's rights because "plaintiff had lawful possession of said premises and had not received notice to quit or consented to defendants entering and taking possession." Those allegations plead malice only in conclusionary terms. There is no allegation that defendants intentionally, as opposed to negligently or mistakenly, disregarded plaintiff's right to possession or were aware that she had not received a notice to quit. No wrongful motive or purpose is stated in the complaint.

The third cause of action alleges malice in general terms and that plaintiff suffered emotional distress and the like from "said intentional acts." The cause of action omits factual allegations of wrongful motive, intent, or purpose. It thus also fails to allege facts supporting exemplary damages. The same is true of the fourth cause of action. The fifth cause of action adds allegations that "[d]efendants' acts of ejection of plaintiff . . . were wilful, malicious, deliberate and without probable cause." If we construe the pleading liberally so as to assume that the allegations of the fifth cause of action are read in conjunction with those in the second, third, and fourth, there still is no general or specific allegation of wrongful motive, intent, or purpose.

We conclude, therefore, that the allegations of the complaint do not state a cause of action for punitive damages. Hence, plaintiff is not entitled to that relief and the judgment granting it must be set aside to that extent. (4 Witkin, Cal. Procedure (2d ed.) Proceedings Without Trial, § 155.)

### Plaintiff's Appeal

Plaintiff contends that the trial court order reducing the amount of the original judgment is erroneous because: (1) it violates plaintiff's right to a jury trial guaranteed by article I, section 16 of the California Constitution; and (2) the trial court lacked power to modify the judgment once it was entered.

■ The trial court's action did not violate plaintiff's constitutional right to a jury trial.

The right to jury trial guaranteed by article I, section 16 of the California Constitution is the right which existed under the common law at the time the California Constitution was adopted. (*People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286-287 [231 P.2d 832].) At common law, as it existed when California's Constitution became effective, the default of a defendant resulted in a writ of inquiry directed to the "sheriff." Pursuant to the writ, the sheriff empanelled a jury which assessed damages, but after the writ of inquiry was returned, the court could either raise or reduce the damages awarded by the jury. (*Dean* v. *Willamette Bridge Ry. Co.* (1892) 22 Ore. 167 [29 P. 440]; but see *Loiselle* v. *Gladfelter* (1964 Fla.App.) 160 So.2d 740, assuming without discussion a defaulting *defendant's* constitutional right to a jury trial where the plaintiff had originally demanded one.)

Because here the court acted with respect to the jury's assessment of damages as it could have acted at common law when the California Constitution was adopted, plaintiff's right to a jury trial was not abridged.

■ Contrary to plaintiff's contention, the trial court had the power to reduce the judgment. The power stems initially from Code of Civil Procedure section 585. Subdivision 2 of that statute provides that in situations where the default judgment may not be entered by the clerk, the plaintiff "may apply to the court for the relief demanded in the complaint . . . ." The court is then directed by subdivision 2 to hear the evidence offered by the plaintiff. "If the taking of an account, or the proof of any fact, is necessary to enable the court to give judgment . . ., the court may . . ., in its discretion, order a reference for that purpose. And where the action is for the recovery of damages . . . the court may order the damages to be assessed by a jury; or if, to determine the amount of damages, the examination of a long account is involved by a reference as above provided."

Subdivision 2 of section 585 thus provides interchangeably for reference to a jury or to a referee in the court's discretion to assess damages in the case of a default. The factual determination of a referee is not binding upon the court. (4 Witkin, Cal. Procedure (2d ed.) Proceedings Without Trial, § 36.) The jury's assessment of damages in the event of default must be construed as no more binding.

■ Plaintiff argues, however, that the court once having reduced the jury's assessment to judgment, it then lacked power to modify the judgment as originally entered. The record does not support the argument. The judgment was not effective until "entered." (*Phillips* v. *Phillips* (1953) 41 Cal.2d 869, 874 [264 P.2d 926].) Here the judgment is noted as modified and is stamped as "entered" on May 19, 1975, the same date on which the written order of the court modifying the judgment was filed. Neither order bears a time stamp. Since we cannot presume error not appearing in the record, we must assume that the order of modification was filed before the judgment was "entered."

### Disposition

The judgment of the trial court, as modified by it, is further modified to strike the finding of punitive damages in the amount of $8,500, and to award total damages in the sum of $14,777.97 plus costs, rather than $23,277.97 plus costs. The judgment is affirmed as modified. Each party to bear his own costs on appeal.

Lillie, Acting P. J., and Hanson, J., concurred.

A petition for a rehearing was denied January 12, 1977, and the petition of the plaintiff and appellant for a hearing by the Supreme Court was denied February 23, 1977.