[Civ. No. 57260. Second Dist., Div. One. Feb. 15, 1980.]

FIFTH AND BROADWAY PARTNERSHIP, Plaintiff and
Respondent, v.
KIMNY, INC., Defendant and Appellant.

**COUNSEL**

David S. Smith for Defendant and Appellant.

Loeb & Loeb, Andrew S. Clare and Mary D. Lane for Plaintiff and Respondent.

## OPINION

**LILLIE, Acting P. J.**—In this unlawful detainer action, a subtenant appeals from judgment entered against it and in favor of the plaintiff for restitution of the premises and treble damages. (Code Civ. Proc., § 1174.)

As best we can ascertain, appellant makes the following contentions: (1) the trial court was without jurisdiction to enter judgment against it; (2) the action does not lie because plaintiff failed to give the tenant 90 days' notice of default it claims is required by the master lease; (3) the statutory 3-day notice to pay rent or quit the premises was defective; (4) there was no evidence of default in the payment of rent; (5) the trial court improperly excluded evidence of surrender of the lease; and (6) the award of treble damages is not supported by the evidence.

I

The complaint in unlawful detainer does not name appellant as a defendant, and the record does not show that it was served as a "doe" defendant. Jack Kimmel, doing business as Orange Delite, was named as a sublessee defendant. He answered the complaint and the matter proceeded to trial. During plaintiff's case in chief, counsel for Kimmel stipulated that appellant (Kimny, Inc., a corporation), not Kimmel, was the subtenant in possession of the premises. After plaintiff rested, Kimmel moved for judgment in his favor (Code Civ. Proc., § 631.8) on the ground, among others, that appellant (Kimny, Inc.) was not a party to the action. The motion was denied. As part of defendant's case in chief, Kimmel then testified: appellant was the tenant under the sublease and was using the premises for a fast food stand called "Orange Delite"; Kimmel was the sole shareholder and the president of appellant; he was the one responsible for appellant's day to day operations and was the only person authorized to sign checks on its behalf and to withdraw funds from its corporate bank account. After Kimmel rested, plaintiff

moved to amend the complaint to add appellant as a defendant. The court granted the motion over Kimmel's objections, declaring Doe One to be "Kimny, Inc., dba Orange Delite." Judgment was entered against appellant alone.

■ A judgment may not be entered against one not a party to the action. (*Fazzi* v. *Peters* (1968) 68 Cal.2d 590, 594 [68 Cal.Rptr. 170, 440 P.2d 242].) However, one not named as a party in the original complaint may be made a party to the action by amendment of the complaint pursuant to Code of Civil Procedure section 473.[1] (*Nissan* v. *Barton* (1970) 4 Cal.App.3d 76, 79 [84 Cal.Rptr. 36].) The allowance of amendments under section 473 rests in the trial court's discretion. (*Cherrigan* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 643, 653 [69 Cal.Rptr. 42].) Appellant does not claim, nor does the record show, that it was prejudiced by the amendment adding it as a party defendant. Accordingly, it cannot be said that the trial court abused its discretion in allowing the amendment.

Appellant complains that it was not served with summons following the amendment. However, as stated in *Simon* v. *City & County of San Francisco* (1947) 79 Cal.App.2d 590, 599 [180 P.2d 393]; "Service of summons is not indispensable to make a defendant a party. Amendment to the pleadings may be an appropriate method to accomplish this result in a proper case."

## II

The master lease provides that if the lessee continues in default of its obligations for 90 days after written notice of such default given by the lessor to the lessee, then the lessor may, upon expiration of the 90-day period, terminate the lease.[2] In his amended answer to the complaint,

---

[1]Code of Civil Procedure section 473: "The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding...the name of any party...."

[2]The master lease provides in pertinent part:

"ARTICLE XI

"FORFEITURE FOR DEFAULT
"SECTION 1. If the Lessee shall at any time be in default in the payment or repayment of any sum of money which the Lessee has agreed to pay or repay to the Lessor,

Kimmel alleged as an affirmative defense that plaintiff failed to give to the lessee the 90-day notice specified in the lease. Plaintiff presented no evidence that it gave such notice.

■ An unlawful detainer action is not based upon contract (*D'Amico* v. *Riedel* (1949) 95 Cal.App.2d 6, 9 [212 P.2d 52]; *Greenberg* v. *Koppelow* (1946) 76 Cal.App.2d 631, 634 [173 P.2d 821]; 28 Cal.Jur.3d, Ejectment and Related Remedies, § 98, p. 242); it is a statutory proceeding and is governed solely by the provisions of the statute creating it. (*Seidell* v. *Anglo-California Trust Co.* (1942) 55 Cal. App.2d 913, 920 [132 P.2d 12].) However, the parties may, in their lease, provide for the termination thereof upon a longer notice than the three-day notice of default required by the statute (Code Civ. Proc.,

or otherwise, as herein provided, or if the Lessee shall be or become in default or suffer any default to occur in any of the covenants, agreements, obligations, conditions or provisions of this lease to be kept or performed by the Lessee. . .and such default shall continue for ninety (90) days after written notice of such default has been given by the Lessor to the Lessee in the manner hereinbefore provided, then and in any such event the Lessor, at, or at any time after, the expiration of said ninety (90) days, may, at its option, and without further notice or demand, terminate this lease, and may enter upon the leased land and premises and the buildings and improvements thereon, either with or without process of law, and may remove all persons therefrom, and all buildings and improvements situated on said premises at the time of the occurrence of such default and any additions to said buildings or improvements shall remain on said premises and be and remain absolutely the property of the Lessor, and no compensation, damage or allowance therefor, shall be made to the Lessee; and all right, title and interest of the Lessee in or to said leased land, premises, buildings and improvements, whether in law or in equity, shall immediately cease and terminate.

"SECTION 2. Without in any way limiting or affecting the generalty [*sic*] of the preceding paragraphs, the Lessee agrees, upon the termination of this lease by such election of the Lessor or by the lapse of time or in any other way, that the said Lessee, then in possession of the leased premises and property, will surrender and deliver up the said leased premises and property peaceably to said Lessor, its agents or attorneys, immediately and in good condition; and if the said Lessee or its agents or attorneys or any of its tenants or subtenants, shall hold the said premises, or any part thereof, one (1) day after the said premises should have been surrendered according to the terms of this lease, they, and every one of them, shall be deemed guilty of unlawful detainer of said premises under the statutes of the State of California, and shall be subject to eviction and removal without any demand or notice, and the Lessor shall have the right to enter upon said premises with or without process of law.

"SECTION 3. It is further understood and agreed by and between the parties hereto that the rights given in this lease to the said Lessor to collect the rent that may be due under the terms of this lease by any proceedings under the same, or the right to collect any additional moneys or payments due under the terms of this lease by any proceedings under the same or the right herein given to the Lessor to enforce any of the terms of this lease, shall not in any way affect the right of such Lessor to declare this lease void, and the term hereby created ended, which said declaration shall end said term of this lease as herein provided, when default is made by the Lessee in any of the terms and provisions of this lease."

§ 1161). (*Hignell* v. *Gebala* (1949) 90 Cal.App.2d 61, 67 [202 P.2d 378]; *Devonshire* v. *Langstaff* (1935) 10 Cal.App.2d 369, 372 [51 P.2d 902].) Plaintiff argues that appellant cannot enforce the 90-day notice provision of the master lease because no privity of contract or estate exists between a sublessee and the original lessor. (*Handleman* v. *Pickerill* (1927) 84 Cal.App. 214, 218-219 [257 P. 890].) This argument misses the point. The question is not whether appellant on its own behalf has standing to compel plaintiff to perform a covenant in the master lease, but whether appellant may assert in this unlawful detainer action a defense which would have been available to the sublessor (lessee). ■ A sublessee is bound by the terms and conditions of the original lease; its rights are dependent upon and subject to the sublessor's rights. (See *Pedro* v. *Potter* (1926) 197 Cal. 751, 760 [242 P. 926, 42 A.L.R. 1165]; *Herman* v. *Campbell* (1948) 86 Cal.App.2d 762, 765-766 [195 P.2d 801].) Thus, if plaintiff had terminated the lease in accordance with its 90-day provision, appellant's possession under its sublease would likewise have been terminated. By the same token appellant, whose rights under the sublease stand or fall with those of the sublessor under the lease, should be able to defend plaintiff's unlawful detainer action on the ground that no 90-day notice of default was given the sublessor pursuant to the lease. We turn now to the question whether plaintiff's failure to give such notice bars the present action.

■ The master lease seems to contemplate that upon the lessee's breach of any of its covenants plaintiff may either (1) give the lessee 90 days' notice of such default and at the end of that period declare the lease terminated, or (2) commence a proceeding in unlawful detainer. (See fn. 3.) In other words, termination of the lease by giving the 90-day notice specified therein is optional, not mandatory; plaintiff may forego that remedy and instead institute unlawful detainer proceedings pursuant to statute. Plaintiff chose the latter course and gave a three-day statutory notice to pay rent or quit the premises. Therefore, plaintiff's failure to give the 90-day notice pursuant to the lease does not bar the present action or render it premature.

### III

The trial court found: "On June 23, 1978, plaintiff caused a written three-day Notice to Pay Rent or Quit (hereinafter referred to as the 'Notice') to be personally served upon certain parties, including Kim-

mel, which Notice unequivocally required the payment of $130,000 or the vacating of the Fifth and Broadway Building within three days, and which Notice stated in plain language so that an ordinary person would understand that Plaintiff was absolutely and unconditionally demanding the payment of the $130,000 or the surrender of possession of the Fifth and Broadway Building."

■ Appellant contends that the notice did not comply with Code of Civil Procedure section 1161, subdivision 2,[3] because it was served on Kimmel rather than on appellant. The purpose of the statutory requirement of notice is to give the tenant, or the subtenant in actual possession, the opportunity to pay the rent and thereby retain possession. (*Four Seas Inv. Corp.* v. *International Hotel Tenants' Assn.* (1978) 81 Cal.App.3d 604, 611 [146 Cal.Rptr. 531]; *Briggs* v. *Electronic Memories & Magnetics Corp.* (1975) 53 Cal.App.3d 900, 905 [126 Cal.Rptr. 34].) The evidence previously summarized herein shows that Kimmel was the only person authorized to make payments on appellant's behalf. Accordingly, service of the notice on Kimmel satisfied the purpose of the statute.[4] Appellant argues that the notice was defective for the further reason that it was not served on the tenant (master lessee) as required by Code of Civil Procedure section 1161. The contention is baseless inasmuch as the evidence shows service of the notice on the tenant, who told plaintiff that he was unable to pay the rent specified in the notice.

Appellant's final attack on the validity of the notice is that the rent demanded therein was excessive. This contention likewise lacks merit. The notice may be served "at any time within one year after the rent becomes due." (Code Civ. Proc., § 1161, subd. 2.) The rent due and unpaid from the master lessee (appellant's sublessor) for the year preceding the notice was at least $130,000.

---

[3]Code of Civil Procedure section 1161 provides in pertinent part: "A tenant of real property, for a term less than life,...is guilty of unlawful detainer:...[¶] 2. When he continues in possession, in person or by subtenant, without the permission of his landlord, or the successor in estate of his landlord, if any there be, after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days' notice, in writing, requiring its payment, stating the amount which is due, or possession of the property, shall have been served upon him and if there is a subtenant in actual occupation of the premises, also upon such subtenant."

[4]We note that service of the notice on Kimmel, appellant's president, satisfied the requirements for service of summons on a corporation. (Code Civ. Proc., § 416.10, subd. (b).)

## IV

▉ The purpose of an unlawful detainer action is to restore to the landlord possession of his property when a tenant fails to pay the rent. (*Nork* v. *Pacific Coast Medical Enterprises, Inc.* (1977) 73 Cal.App.3d 410, 413 [140 Cal.Rptr. 734].) The trial court found as facts that plaintiff was not paid or tendered $130,000 within three days after service of the notice and that appellant failed and refused to vacate the premises within that period. The evidence supports such findings and further shows that appellant remained in possession at the time of trial.

## V

▉ Plaintiff's unlawful detainer action was filed June 27, 1978. On July 19, 1978, plaintiff and the lessee, by settlement agreement, terminated the master lease. On several occasions during the trial Kimmel offered to prove that such termination constituted a surrender rather than a forfeiture of the master lease, and therefore the sublease was unaffected and remained in force. The trial court excluded such evidence on the ground that it was irrelevant. Appellant contends the ruling was improper. We disagree.

In support of its contention, appellant cites *Buttner* v. *Kasser* (1912) 19 Cal.App. 755 [127 P. 811], wherein it is stated: "'A tenant may surrender his estate to his landlord, but if he have since its commencement created some minor interest out of it, or have made an underlease, he cannot, by surrendering, destroy the charge or affect the estate of the underlessee.'" (P. 760.) This rule is inapplicable in the present case. As explained in *Herman* v. *Campbell, supra,* 86 Cal.App.2d 762, 766: "'Where a cause of forfeiture has arisen, the fact that the lessee consents to the enforcement of the forfeiture does not render the transaction a surrender as distinguished from a forfeiture so as to bring it within the rule that a lessee cannot by a surrender affect the estate or the interest of third persons held under him.'" That is precisely the situation in the present case. Neither the lessee nor appellant cured the default (nonpayment of rent) within three days after service of the notice. Accordingly, at the end of that period a cause for forfeiture of the lease arose. Only after plaintiff filed this lawsuit to enforce the forfeiture did it settle with the lessee. Such settlement did not operate to restore to appellant the right of possession which had already been forfeited.

## VI

The trial court found that commencing July 1, 1978, the fair rental value of the premises occupied by appellant was $3,000 per month. It further found that appellant acted with malice in failing and refusing to vacate the premises. Judgment was entered in favor of plaintiff, and against appellant, for restitution of the premises and for treble damages[5] of $58,500 (three times $19,500, which latter sum represents the fair rental value for the six and one-half months from July 1, 1978, to the date of trial).[6]

■ In an unlawful detainer action, treble damages properly are awarded against a defendant if malice is pleaded and proved (*Cyrus* v. *Haveson* (1976) 65 Cal.App.3d 306, 316 [135 Cal.Rptr. 246]). It must be established that defendant willfully, deliberately, intentionally and obstinately withholds possession of the property with knowledge of the termination of his lease and against the will of the landlord. (*Erbe Corp.* v. *W & B Realty Co.* (1967) 255 Cal.App.2d 773, 780 [63 Cal.Rptr. 462]; *Buck* v. *Morrossis* (1952) 114 Cal.App.2d 461, 466-467 [250 P.2d 270].) The evidence herein shows: late in the summer of 1978 Mr. Kaman, a general partner in plaintiff, met with Kimmel to discuss the possibility of appellant's "renewing" its tenancy; Kimmel conceded to Kaman that "he felt that he was out, and that he wanted to try to establish a new tenancy. He was certainly concerned about the fact that he no longer had a position in the space." Kaman outlined the terms under which plaintiff would permit appellant to remain in possession; Kimmel rejected those terms and "said that he might as well stay because he had nothing to lose by leaving, and he might as well try to fight [the lawsuit] so he could at least get some-

---

[5]Code of Civil Procedure section 1174 provides in pertinent part: "(b) The jury or the court...shall also assess the damages occasioned to the plaintiff...by any forcible or unlawful detainer, alleged in the complaint and proved on the trial, and find the amount of any rent due, if the alleged unlawful detainer be after default in the payment of rent. If the defendant is found guilty of...forcible or unlawful detainer, and malice is shown, the plaintiff may be awarded either damages and rent found due or punitive damages in an amount which does not exceed three times the amount of damages and rent found due. The trier of fact shall determine whether damages and rent found due or punitive damages shall be awarded, and judgment shall be entered accordingly."

[6]The judgment awards plaintiff the further sum of $6,600, representing $300 per day from the date of trial to the date of entry of judgment. Appellant does not question such award.

thing out of the space." Such evidence supports the award of treble damages against appellant.

The judgment is affirmed.

Hanson, J., and Epstein, J.,* concurred.

A petition for a rehearing was denied March 13, 1980, and appellant's petition for a hearing by the Supreme Court was denied April 10, 1980.

---

*Assigned by the Chairperson of the Judicial Council.