Filed 9/3/21

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

| | |
|---|---|
| ADAIR LARA, as Trustee, etc., | CUD-19-664421 |
| Plaintiff and Respondent, | |
| v. | |
| PETER MENCHINI et al., | **OPINION** |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Francisco County, Suzanne R. Bolanos, Judge.  Affirmed.

Law Offices of Robert De Vries, Robert De Vries, for Defendants and Appellants.

Steven Adair MacDonald & Partners, Steven A. MacDonald, Jethro S. Busch, and Anna Y. Liu, for Plaintiff and Respondent.

_____

After a bench trial, the trial court found appellants guilty of unlawful detainer. Appellants argue that the judgment should be reversed because the three-day notice to pay rent or quit was defective insofar as it did not allow them, as subtenants, to pay the tenant's rent and cure the tenant's default. After considering the record, arguments, and applicable law, we AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

In 2002, respondent Adair Lara bought a six-unit Victorian house at 888/898 14th Street in the city of San Francisco. One of the units is 894 14th Street, which was leased by the previous owner to Peter Menchini in 1995. Lara inherited this lease when she purchased the house. Menchini paid rent to Lara. Rent was due on the 5th day of each month.

On November 1, 2016, appellant Larysa Bogachyk Volynets moved into 894 14th Street. Volynets wrote a $720 check for Menchini once a month for rent, and placed it on the fridge.

On April 1, 2017, appellant Kevin Bard moved into 894 14th Street. Bard also wrote $720 checks monthly for Menchini, and placed them on the fridge.

On January 1, 2019, appellant Allison Matamoros moved into 894 14th Street.

Menchini did not pay rent in December 2018. Bard and Volynets went that month to the Q Foundation, which provides rental assistance, "to set up a third-party payment process . . . so that Mr. Menchini could pay his December rent." Lara accepted a third-party rental assistance check from the Q Foundation for Menchini's December rent. (See Civ. Code, § 1947.3, subd. (a)(3).) Menchini himself paid rent for January 2019.

Menchini did not pay rent in February 2019 or March 2019. Rent was $2,882.01 per month, so Menchini owed $5,764.02.

2

In February 2019, four other people lived with Menchini: Tuyen Alexandria Doan, Allison Matamoros, Kevin Bard, and Larysa/David Bogachyk Volynets. The record is silent as to the date that Doan moved in, but Doan moved out prior to this unlawful detainer action. The four of them asked Menchini to cash their checks and pay rent to Lara.

Bard is not on the lease; Lara has never met him or accepted rent from him. Volynets is not on the lease; Lara has never met him or accepted rent from him.

On February 16, 2019, Volynets emailed Lara that he and Matamoros, Bard, and Duan "left their checks for Mr. Menchini, but he hasn't deposited them[.]"

On February 28, 2019, Lara emailed Volynets and the others that they needed to move out by April 1.

On March 15, 2019, Lara emailed Matamoros, Volynets, Bard, and Duan: "The rent [is] in arrears, so a pay rent or quit notice will appear on the door to 894 on April 1. With Peter gone, I will offer the four of you the flat at market rate, $7,200."

On March 15, 2019, Bard advised Lara in an email that "the checks for Peter were still on the fridge, but he didn't deposit the money." On the same day, Volynets asked Lara in an email: "Why . . . don't [you] ask Peter to pay the rent? This seems to be his duty and he has our money."

On March 22, 2019, Menchini was served with a three-day notice to pay rent or quit. Volynets was also personally served with several copies of the notice, three of which he gave to the other occupants. Menchini did not pay rent, and he did not move out. The three-day notice to pay rent quit or quit stated that $5,764.02 in rent for February and March 2019 was due, and that "PETER MENCHINI is the only authorized tenant at the

3

Premises. All other occupants are not tenants nor co-tenants of Landlord, and do not have a direct[] landlord-tenant relationship with Landlord. Therefore, Landlord will only accept payment of rent from PETER MENCHINI and no other persons." The three-day notice also stated: "the Lessor does hereby elect to declare the forfeiture of your lease or rental agreement under which you hold possession of the above-described premises, if you fail to pay the amount of rent demanded above."

On March 24, 2019, Lara met with Volynets and Matamoros. Lara told them that she could not accept their checks; she could only accept payment from Menchini.

On March 28, 2019, Lara filed an unlawful detainer complaint (Code Civ. Proc., § 1161, subd. 2) against Peter Menchini, Allison Matamoros, Kevin Bard, Tuyen Alexandria Doan, and Larysa Bogachyk Volynets. The complaint and summons were properly served upon all parties.

On April 1, 2019, Lara received checks from Volynets, Matamoros, and Bard. The checks were "[f]or the month of April."

On April 2, 2019, Menchini moved out. On the same day, Lara emailed Volynets and Matamoros that she had received their checks, but discarded them. "You are staying on illegally," Lara wrote. Lara testified that she discarded the checks "[b]ecause I wasn't going to deposit them—they're not my tenant." Lara testified that if she accepted their checks, "[t]hat would have created an instant tenancy with subtenants at Peter's old rent."

On April 3, 2019, appellants demurred, arguing that "the Complaint fails to state facts sufficient to constitute a cause of action for unlawful detainer because the underlying rent notice

4

fails to allow the subtenants to pay the demanded rent pursuant to Civil Code §1947.3 and therefore the underlying rent notice does not meet the statutory requirements of Code of Civil Procedure §1161(2)."

On May 2, 2019, the trial court overruled the demurrer.

On June 7, 2019, the trial court granted Lara's request to dismiss Menchini and Doan as defendants, since they moved out prior to trial.

The three-day bench trial took place on June 26, 2019, July 1, 2019, and July 2, 2019. Matamoros did not appear at the bench trial. During the trial, Bard testified that Matamoros "is in Hawaii right now."

On September 18, 2019, the trial court issued a statement of decision and entered judgment in favor of Lara. "Plaintiff has met all of the necessary elements and satisfied Plaintiff's burden to establish a cause of action for unlawful detainer based on non-payment of rent," the trial court found. "Defendant Peter Menchini failed to cure the Three (3) Day Notice to Pay Rent or Quit and did not timely pay the rent owed by March 25, 2019 for the months of February 2019 and March 2019 and continued to occupy the property. ¶ As a result, Plaintiff's lease with Defendant master tenant Peter Menchini was forfeited. . . . ¶ There is no privity of contract between any subtenants, including ALLISON MATAMOROS, KEVIN D. BARD, and DAVID BOGACHYK VOLYNETS, sued as LARYSA BOGACHYK VOLYNETS. ¶ After the forfeiture of master tenant Defendant Peter Menchini's lease, the Defendants have no legal right to remain in possession."

On September 26, 2019, the trial court denied appellants' motion for a new trial.

Appellants timely filed a notice of appeal.

## II.   DISCUSSION

Appellants Allison Matamoros and Larysa aka David Bogachyk Volynets[1] argue that the unlawful detainer judgment must be reversed because the three-day notice to pay rent or quit was defective insofar as it did not allow them, as Menchini's subtenants, to pay his rent and cure his default.  We disagree.

Appellants' briefing on appeal nowhere states the applicable standard of review.  Respondent points out that factual findings are reviewed for substantial evidence, but appellants' argument regarding the three-day notice is not based on the trial court's findings of fact.  We review the trial court's findings of fact for substantial evidence, and we independently review the trial court's conclusions of law.  (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712; see *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [" 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.'  [Citation.]"].)

A tenant of real property is guilty of unlawful detainer "[w]hen the tenant continues in possession, in person or by subtenant, without the permission of the landlord, . . . after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days' notice . . . in writing, requiring its payment . . . shall have been

---

[1] Kevin Bard, Peter Menchini, and Tuyen Alexandria Doan are not parties to this appeal.

6

served upon the tenant and if there is a subtenant in actual occupation of the premises, also upon the subtenant." (Code Civ. Proc., § 1161, subd. 2.)

A subtenant's rights "are dependent upon and subject to the sublessor's rights. . . . [R]ights under the sublease stand or fall with those of the sublessor. . . ." (*Fifth & Broadway Partnership v. Kimny, Inc.* (1980) 102 Cal.App.3d 195, 201; accord *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1065.) "'The rights of a subtenant are terminated, and the master landlord is entitled to possession, when the master lease is terminated because of the tenant's default in the performance of his or her obligations.' [Citation.]" (*Syufy Enterprises v. City of Oakland* (2002) 104 Cal.App.4th 869.) Only when a tenant voluntarily surrenders its estate to the landlord can a subtenant maintain possession. (*Northridge Hospital Foundation v. Pic 'N' Save No. 9, Inc.* (1986) 187 Cal.App.3d 1088, 1094-1095.) " 'Thus, if the original tenant has incurred a forfeiture of his lease, and for that reason the landlord annuls the lease, the landlord is entitled to the possession as against the sublessee.' " (*Herman v. Campbell* (1948) 86 Cal.App.2d 762, 766.)

Appellants argue that "subtenants in actual possession must be served with three-day notices to pay rent or quit directed to them giving them an opportunity to cure the default by paying the rent." For this proposition, appellants rely on *Four Seas Inv. Corp. v. International Hotel Tenants' Assn.* (1978) 81 Cal.App.3d 604, 611 ["the Legislature did intend to distinguish between notice requirements on subtenants as opposed to tenants, the intent clearly being to provide an opportunity for a subtenant to cure his tenant's default except where, as here, the default is

incurable because the term has expired"], *Fifth & Broadway Partnership v. Kimny, Inc.*, *supra*, 102 Cal.App.3d at p. 202 ["The purpose of the statutory requirement of notice is to give the tenant, or the subtenant in actual possession, the opportunity to pay the rent and thereby retain possession"] and *Briggs v. Electronic Memories Magnetics Corp.* (1975) 53 Cal.App.3d 900, 904-905 ["landlord did not serve subtenant with a three-day notice to pay rent or quit. Merely providing subtenant with a copy of the notice directed to and served on tenant is not sufficient, since it merely demands that tenant pay rent or quit, not that subtenant do so"]. While some language in these cases supports appellants' argument, when read in context and applied to the facts here, the cases do not support appellants' argument. Two of the cases are distinguishable because the landlord accepted or demanded rent directly from the subtenant. In *Briggs v. Electronic Memories Magnetics Corp.*, *supra*, 53 Cal.App.3d 900, the landlord accepted rent directly from the subtenant. (*Id.* at p. 903.) In *Fifth & Broadway Partnership v. Kimny, Inc.*, *supra*, 102 Cal.App.3d 195, the landlord demanded rent directly from the subtenant. (*Id.* at pp. 201-202.) The third case undermines appellant's argument: in *Four Seas Inv. Corp. v. International Hotel Tenants' Assn.*, *supra*, 81 Cal.App.3d 604, the landlord did not serve the subtenants, and the Court of Appeal concluded that the landlord was not required to serve the subtenants: "Code of Civil Procedure section 1161 requires notice to terminate on the tenant only and not upon subtenants, who were not parties to the month-to-month tenancy." (*Id.* at p. 611.)

Here, there is nothing in the record which would support a finding that the landlord, Lara, accepted or demanded rent from the subtenants. If Lara had accepted rent from the subtenants,

8

she may have thereby created a new tenancy with them at Menchini's monthly rate of $2,882.01. "A tenancy may be created by consent and acceptance of rent, despite the absence of a lease. [Citation.]" (*Cobb v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2002) 98 Cal.App.4th 345, 352 [new tenancy created when landlord accepted rent from subtenant after original tenant moved out of the unit]; accord *Parkmerced Co. v. San Francisco Rent Stabilization & Arbitration Bd.* (1989) 215 Cal.App.3d 490, 494-495.) The record similarly does not support a finding that the landlord waived the sublease prohibition. "[T]here is no waiver of a landlord's sublease prohibition unless the landlord received 'written notice from the tenant that is party to the agreement and thereafter accepted rent.'" (*Mosser Companies v. San Francisco Rent Stabilization & Arbitration Bd.* (2015) 233 Cal.App.4th 505, 513, quoting Civ. Code, § 1954.53, subd. (d)(4).)

Appellants argue that "[a]s legal occupants, [they] are entitled to the just cause eviction protections of the Rent Ordinance." But even if appellants were lawful occupants of the house, no authority cited by them supports their contention that a lawful occupant is a "tenant" within the meaning of the San Francisco Rental Ordinance, such that the landlord was required to accept rent from them. (See S.F. Admin. Code, § 37.2(t) [defining tenant as "[a] person entitled by written or oral agreement, sub-tenancy approved by the landlord, or by sufferance, to occupy a residential dwelling unit to the exclusion of others."].) We are not aware of any such authority. (See *Danger Panda LLC v. Launiu* (2017) 10 Cal.App.5th 502, 520 & fn. 13 [rejecting similar argument].)

When Menchini failed to pay the rent for February and March 2019 before the three-day notice to pay rent or quit expired, he forfeited the lease, and " 'the landlord was entitled to possession as against the sublessee.' " (*Syufy Enterprises v. City of Oakland*, *supra*, 104 Cal.App.4th at p. 883, quoting *Herman v. Campbell*, *supra*, 86 Cal.App.2d at p. 766.)  Lara was not required to accept rent from Menchini's subtenants.  (See Civ. Code, § 1947.3, subd. (a)(3)(A) ["A landlord . . . is not required to accept the rent payment tendered by a third party unless the third party has provided to the landlord . . . a signed acknowledgment stating that they are not currently a tenant of the premises for which the rent payment is being made and that acceptance of the rent payment does not create a new tenancy with the third party."].  Had Lara accepted rent directly from the subtenants without such a signed acknowledgment from them, she may have inadvertently created a new tenant-landlord relationship with them.  (*Cobb v. San Francisco Residential Rent Stabilization & Arbitration Bd.*, *supra*, 98 Cal.App.4th at p. 352.)

"A rent-controlled apartment cannot . . . be passed on freely 'from friend to friend or generation to generation.'  Only those occupants who reside in the apartment at the start of the tenancy and do so with the landlord's express or implicit consent are protected from unregulated rent increases.  [Those] who subsequently move into the apartment are not protected unless the landlord consents to the occupancy and accepts rent from the new occupant, thus creating a new tenancy.  [Citation.]" (*Mosser Companies v. San Francisco Rent Stabilization & Arbitration Bd.*, *supra*, 233 Cal.App.4th at p. 516.)  Just as Lara was entitled to ask the subtenants to pay $7,200 to continue in possession after Menchini vacated, so too was she entitled to initiate

10

unlawful detainer proceedings when they continued in possession after Menchini forfeited his lease.

## III. DISPOSITION

The judgment is affirmed.

DATE:  September 3, 2021

FLEMING, J.

We concur:

CAFFESE, P.J.

WOODS, J.